Bentley, J.
(orally).
This is a petition to reverse the judgment of the court of common pleas which was rendered against the plaintiff below — the plaintiff in error here — the court finding that its petition was fatally defective; it being attacked, first, by a motion to strike out a large portion of the amended petition. That motion being allowed, and a part stricken out, the court found that there was not then sufficient facts averred in the ¡petition to constitute any cause of action; and the plaintiff not amending, final judgment was rendered in the action .against it.
*598 The qustion presented upon the record involves a matter of pleading, and consideration of the sufficiency of the plaintiff’s petition. Practically it is to be considered as if a demurrer had been filed to it. The petition seeks to charge in general terms a conspiracy entered into by the defendants to further their own interests in sustaining a monopoly of a street railroad business in this city, and to injure the plaintiff and its business in constructing, maintaining and operating a street railway in certain streets of this city. It is alleged that this conspiracy was entered into by the defendants for these purposes, and also that in furtherance of that conspiracy, in endeavoring to carry it out and execute it, the defendants maliciously did certain things mentioned in the petition,-which it is claimed were injurious to the plaintiff, detrimental to the plaintiff’s interests, and an injury to its particular rights; and it is said in general terms at the close of the petition: “Plaintiff says that by means of the interference with its business and property as herein set forth, by the malicious conspiracy carried out by defendants as aforesaid, it has been subjected to great loss and damage, to-wit: $250,000, for which it asks judgment against defendants.”
There are various objections urged to this petition, but the one of the most considerable importance is the question as to the allegation of damages, as we understand it; defendants claiming that there is no such allegation of damages in the petition, or of facts which would give rise, legally considered, to damages, as would sustain the action. The plaintiff, of course, contends that there is no such defect; that the pleading is sufficient in this regard, as in all others; and that in an action for conspiracy such as it is claimed this action is, there is no necessity for a more succinct statement of damages, or of facts constituting damage, than is embodied in this petition. It may be well, first, to state briefly what we consider is the correct view of the law as to conspiracy, and as fundamental to that *599 we call attention to a case decided by tlie Supreme Court of Minnesota, and reported in the last number of the Weekly Law Bulletin, of this state. Page 242 of the Bulletin, the fourth paragraph, contains this language:
"What one man may lawfully do singly, two or more may lawfully agree to do jointly. The number who unite to do the act can not change its character from lawful to unlawful. The gist of a private action for the wrongful act of many is not the combination or conspiracy, but the damage done or thereatened to the plaintiff by the acts of the defendants. If the act be unlawful, the combination of many to commit i^may aggravate the injury, but cannot change the character of the act. In a few cases there may be some loose remarks apparently to the contrary, but they evidently have their origin in a confused and inaccurate idea of the law of criminal conspiracy, and in failing to distinguish between an unlawful act and a criminal one.. It can never be a crime to combine to commit a lawful act, but it may be a crime for several to conspire to commit an unlawful act, which if done by one individual alone, although unlawful, would not be criminal. Hence, the fact that the defendants associated themselves together to do the act complained of is .wholly.inimaterial in this case. We have referred to this for the reason that counsel has laid great stress upon the fact of the combination of a large number of persons, as if that rendered their conduct actionable.”
The court cites in that paragraph, Bowen v. Matheson, 14 Allen, 499; Steamship Co. v. McGregor, 23 Q. B. Div, 598, 1892 App. Cas. 25; Parker v. Huntington, 2 Gray, 124; Wellington v. Small, 3 Cush. 145; Payne v. Ry. Co. 13 Lea. 507.
Quite-a number of text books were cited by counsel as bearing upon this general question, and among them was the chapter in Bishop on Non-Contract Law, beginning with sec. 353, and ending with 367 — being chap. 19 under the head of "Conspiracy.” I will read but a comparatively small portion of this.
*600 ‘"Sec. 355. Is there a civil wrong properly termed conspiracy ? In the criminal law, there are wrongs against the public, whereof a part are as incorrectly called conspiracy, as are the civil ones just mentioned; but, at the same time, another part justly bear this name.”
And further down:
"So that there is a crime of conspiracy, consisting of the combining of will and endeavor, whereof one cannot be guilty unless his fellows are guilty also. And it is a principle of our civil jurisprudence that,whenever one suffers specially from a crime, he may have his civil action of tort against the wrong-doer,; or, as expressed in an English court, applj'iug the principle specifically to conspiracy, if the parties are liable to indictment for conspiracy, ‘then an action for conspiracy would lie. ’ Therefore, the conclusion seems inevitable that there are circumstances in which conspiracy proper is actionable; in other words, in which one commits a civil wrong when, and only when, another or others participate with him.
"'See. 350. The rule in civil jurisprudence, that one cannot maintain a suit for another’s wrong until lie had been injured thereby, greatly reduces the number of actions for what is truly conspiracy. The mere criminal combining is at the common law indictable, but no wrongful combination is actionable until the party complaining has suffered a damage; * * * in an action at law, therefore, the material thing is to show an injury, and it would at the first impression seem to be unimportant whether one defendant or more did it. Probably from this reason, but it is of little consequence from what, some text writers and judges have expressed the opinion that there is n<j such thing as conspiracy proper in our civil jurisprudence. The question could not be matter of judicial decision, for it would be impossible to make up a record involving it. Nor would it in any case be absolutely necessary that a verdict should be rendered against more than a single conspirator; for it is so even in the criminal law. But it is simple fact that there are actionable injuries which two or more can inflict on another, not within the power of one alone. Therefore, it is fact, however we may reason, that there is a civil wrong properly termed conspiracy.
*601 “Sec, 857. Conspiracy, in the proper restricted meaning of the word, and viewed as a tort, is a malicious combination of two or more persons to injure another, in person, or property, in a way not competent for one alone, resulting in actual damage to him.”
We think this chapter of this book very clearly and succinctly states the whole law“fupon this subject; but the question still is, under those rules, does this present amended petition sufficiently allege the wrongs and injuries and damage that are claimed? Without elaboration at length, it is our understanding that pleadings generally which seek damages for a tort, for a wrong or injury, must contain an averment of fact which the law recognizes as being injurious, as indicating that damages must have been suffered in some form, or there must be a specific averment of damages suffered in the particular instance in order that the pleading be sufficient. There are a large class of injuries from the mere statement of which the court would take notice that injurious consequences would naturally, if not necessarily, follow. And we suppose that the rule is that in such cases, having stated the facts, it is sufficient for the pleader to state in general terms at the close of his petition, or at some appropriate place, “to the damage of the plaintiff” so much: this averment not being made mainly for the purpose of alleging the fact of damages, but simply for the purpose of stating the limit of the amount of damages claimed. Where facts are not so stated — that is, facts of the character that would necessarily give rise to damage — it is necessary for the pleader to show in the petition that damages in the particular case have in fact resulted. It may not be necessary always to go into the minutia, to state in detail all of the circumstances which would bear upon the question of damages; but there must be a direct averment *602 of fact showing that damages did result, or some equivalent averment, in cases of that kind. Now, having considered this petition in the light of these rules, we will indicate our views with respect to it.
The plaintiff says, that the Toledo Consolidated Street Railway Company is, and was, at the time of the happening of the events narrated in the petition, a corporation organized under the laws of the state of Ohio, and operating a street railroad in the city of Toledo. The next paragraph charges, that, “After the said, The Toledo Consolidated Street Railway Company, had commenced the operation of its street railway system as aforesaid, to-wit: upon the 5th day of April, 1889, the plaintiff, The Toledo Electric Street Railway Company, was duly incorporated to operate a street railway system in the said city of Toledo, and duly obtained permission from the common council, of said city, by ordinance, to operate all its street railroad system, on and along the folloAving streets, to-wit.” Then follows a long list of streets and parts of streets along which it is said that the plaintiff has obtained the permission of the common council to operate its system of railroad. (I would say, in passing, that it does not contain the averment that any of these streets are the same streets or parts of streets along which the defendant corporation is operating its system of railroad. Perhaps this is of no special moment.) Then follows this paragraph:
“Plaintiff further says, that before the permission of said council to operate said street railroad could be obtained, it was necessary for this plaintiff, through itself or others, to obtain the written consent of a majority of the property holders upon each street above named, represented by the, foot front of the property abutting thereon, and to agree -to carry passengers on said railroad at the lowest rate of fare. Before the incorporation of the plaintiff aforesaid, David Robison, Jr., Trustee, began the work of obtaining the consents of the property holders on the various streets above named *603 for the construction of a street railroad thereon, and duly-obtained the permission of the common council of the city of Toledo to construct a street railroad in and along said streets,-as aforesaid.”
It will be noticed that it says the plaintiff, the Toledo Electric Street Railway Company, obtained a permission of the common council to operate a street railway along these designated streets, and this last paragraph alleges that before that David Robison, Jr., Trustee, had also duly obtained permission of the council to do that same thing, and on the said streets.
“And therafter, said David Robison, Jr., Trustee, duly sold, transferred and assigned to this plaintiff all his right and interest in the ordinance granting said permission aforesaid.”
That would be the ordinance granting to David Robison, Jr., of course — “together with all claims he had against the defendants for maliciously conspiring to interfere and ruin his said enterprise as hereinafter set forth.”
Therefore it would seem that after the incorporation of the plaintiff it obtained an ordinance and permission to operate its railroad along these designated streets upon which before that said David Robison had obtained permission to operate upon, as if there were two separate permissions of the council to operate a street railway along these identical streets; but that after the incorporation, Robison had assigned his interest, under his permission, to the plaintiff. The petition proceeds:
“Plaintiff further avers that said defendants, Albion E. Lang, William E. Hale and Norman B. Ream, are all connected with and personally interested as officers and stockholders in the said The Toledo Consolidated Street Railway Company, which said company had by divers purchases, and conveyances obtained the entire control of, and during the time of the transactions herein set forth was operating, all the street railways lines in the city of Toledo, except those of this plaintiff.
*604 "For canse of action against said defendants and each and all of them, plaintiff says that defendants, maliciously and wickedly contriving and conspiring how they might perpetuate the said monopoly of street railway carrying business in the said The Toledo Consolidated Street Railway Company, and prevent and destroy the inauguration of any competing street railway enterprise in the said city of Toledo. And further, maliciously contriving and intending to injure plaintiff in its business of constructing and operating its street railway in said city, impair its credit, and involve its whole property .rights and franchises in ruin; did, to-wit: on the first day of January, 1889, wickedly, and maliciously, among themselves conspire, confederate and agree, together as follows, to-wit: to delay and if possible prevent the plaintiff and the said David Robison Jr., Trustee, constructing said railroad.”
(That is, that some time before the actual incorporation of the plaintiff company this conspiracy was entered into for this purpose.)
"To disable them from selling or otherwise disposing of the bonds and other securities issued for raising the means to construct said railroad, to prevent manufacturers and dealers in iron and railroad and electrical supplies, from selling the same to plaintiff, and to prevent them from being used for said railroad, and further to prevent plaintiff and David Robison, Jr., Trustee, from placing said railroad in condition to be operated as they were authorized by law to do, and to destroy all opportunity and possibilty of any profit being made out of the operation of the said street railroad. The defendants so maliciously contriving, on or about the first day of January, 1.889, and at various other times prior to the commencement of this action in pursanee of and according to the combination and conspiracy, aforesaid, and in order to carry the same into effect, did maliciously, by misrepresentation, persuade abutting property owners, etc.”
So it appears from the petition that the conspiracy was entered into, before the incorporation of the plaintiff company. There is no allegation that the organization of the plaintiff company was then contemplated, or anything being *605 done with a view to that; and, of course, whatever is said here in the petition as happening before the 5th of April, when this company was incorporated, must, although the plaintiff’s name is used, be assumed to apply to David Robison, Jr., Trustee; and if the plaintiff has anything from that, it gets it by assignment from David Robison, Jr.,Trustee. The petition proceeds to state what was done in carrying out this malicious conspiracy:
‘‘They did maliciously, by misrepresentation, persuade abutting property owners on the streets through which the proposed railroad was run to withhold their consents from the said David Robinson, Jr., Trustee for the construction of said road. ”
That is one part of the sentence We must take notice of course, that the law is as stated in this petition regarding the necessity of getting consents before a street railway can be built. It is alleged that they persuaded property owners on the streets to -withhold their consent. ' Perhaps that is sufficient allegation that property owners did, in fact, -withhold their consent; but it cannot mean, it cannot be construed fairly as meaning, that all of the property holders withheld their consent, or that a sufficient number of property holders withheld their consent, to defeat the enterprise. Not only is there a failure of allegation in that respect, but the affirmative allegations of the petition contain the showing that whatever difficulties were encountered along this line were obviated, because permission was obtained, and the road was built; so that if it were true that certain property owners were persuaded, it apparently made no difference. And there is no averment that any delay resulted from the act of these property owners in withholding their consents, or that there was any expense incurred on that account. It may have been one, it may have been two, but the number didn’t affect anything.
‘‘Did maliciously induce by pecuniary and other improper considerations, some property owners who had given their *606 consents for said railroad to withdraw the same from the said David Robison, J., Trustee.”
The same remark will apply to that. That may be all so, and not result in the least injury; that is, there is an absence of averment that a sufficient number of those did withdrawn on this account to make any difference in obtaining the ulitimate object of the plaintiff or David Robison, Jr.
“Did maliciously oppose by false statements in the common council of the city of Toledo, the ordinances by which David Robison, Jr., Trustee, and this plaintiff was granted permission to construct a street railroad in the streets of said city.”
Whatever they did, however willful and malicious the defendants may have been in that regard, however they may have bitten the air in their malice, yet they accomplished-nothing; that is, there is no averment that they accomplished anything; but, on the contrary, the permissions were obtained.
“Did maliciously delay-the construction of said railroad for more than four months.”
To this averment we will recur hereafter.
"Did make bids in the name of others for the construction of said road in competition with the said David Robison, Trustee, falsely claiming that such bids were made in good faith by those who had submitted them to the council.”
There is an absence of averment here that this false representation and false bidding made any difference at all with the bid of the plaintiff or Mr. Robison. There is no averment that by reason of these false bids the council were misled with the idea that they were made,in fact, in good faith, or that the council regarded them as made in good faith, or that Robison or the plaintiff, were compelled to make more favorable terms for the city and worse for themselves than, they otherwise would; but, so far as the averments go, they had as little effect as the other matters in question.
*607 “Did maliciously stir up and instigate owners of property abutting on said streets to bring suits without probable cause in the state and United States courts, to restrain plaintiff from proceeding with the work of constructing its road, in some of which suits injunctions were obtained, restraining plaintiff, to its great loss and damage.”
Whatever may be said in other respects regarding this averment, it does not appear by it or in the petition but that these same suits are still pending in the court. If this cause were tried upon the facts, this court, or whatever court tried the facts of the case, would be asked to find that these suits were without probable cause; but its conclusion upon that subject might be contrary to the judgment of other courts, trying these same actions, and according to the well known rules, the averment that said suits were terminated, should be in this petition in order to count upon this particular clause.
“Did cause and instigate the Attorney-General of the state of Ohio, to institute proceedings, without probable cause, in the Supreme Court of Ohio, to oust and exclude plaintiff from the use and enjoyment of its franchises and property; the expense of said suits being paid by the defendants, and the attorneys for their prosecution being employed by them. ”
The same consideration would apply to that as to the last clause; that is, from the petition, we do not know how that matter terminated, or that it has terminated at all. Perhaps it may be said that it was fairly inferible that it has not yet terminated against the plaintiff, because it says it is a corporation and is a going concern.
“Did maliciously and falsely represent, verbally and in writing, to various capitalists in different parts of the country, that the street railroad of plaintiff was not one intended to be constructed, was a paper road, and not adequately backed financially; that investments in its securities would be unsafe. ”
*608 This is another paragraph 'by itself. The same things might be said about that as were said about the other áverments, that however wrongful and malicious such conduct might have been, it does not appear that it accomplished anything; that it delayed the plaintiff or Mr. Robison a moment, or that it subjected him to any expense, or precluded them from obtaining the advantages which they otherwise might have obtained.
“Did maliciously and falsely charge, in verbal and written communications, that the plaintiff would not be able to build its road; that it would be sold out in a few months; that plaintiff was insolvent; and in divers other similar expressions did defame and injure plaintiff’s said street railroad enterprise, its reputation and its property, in public estimation,and did maliciously make false statements regarding the financial standing or plaintiff and said Robison, Jr. Trustee, to the effect that they were not responsible, to munufacturers and dealers in railroad and electrical supplies with whom plaintiff was negotiating for purchases.”
This is obnoxious to the same criticism. That any manufacturers or dealers in supplies refused them credit, or refused to deal with them, or that they lost in fact any custom by it, is not averred. I say as yet it is not averred except that it is averred, as I have already read, “they did maliciously delay the construction of said railroad for more than four months.” As I have already read in the beginning, the plaintiff does state in his petition: i,!By means of the interference with its business and property as herein set forth, by the malicious conspiracy carried out by defendants as aforesaid, it has been subjected to great loss and damage, to-wit: $250,000.” We think that from the acts complained of here, if they or any of them occurred, injury may have resulted, whether they were done by one or more of the defendants; if in fact a single defendant had gone to a person with whom these parties were about to deal or were dealing, and by false and malicious representations actually de *609 prived the plaintiff, or Mr. Robison, of an advantage which legally he, or it, had a right to, that person would have been liable for damages; and if he had associated one, two or more persons or corporations, with him, it would make no dfference, except that it would involve them in the liabilty which he himself had incurred as well. The fact that is alleged here,is that they did maliciously delay the construction of said railroad for more than four months. Supposing that had simply stood alone in the petition, without averring a conspiracy as it is averred here, and it had been said that the defendants did maliciously delay the construction of said ralroad for more than four months, to the damage of the plaintiff, $250,000, would that be a sufficient pleading to show a cause of action? I cannot give authorities at length here. I happen simply to have this statement in sec. 838 of^Bishop on Non-Contract Law,speaking of another matter, however, he says:
“A false representation made with the view to cheat a person does not injure him unless or until he is cheated.”
While there may be better expressions to illustrate what I am dealing with, that will afford a basis. Supposing the plaintiff had put in his petition simply the statement that false representations were made to him whereby he was deceived and cheated, to his damage in the sain of $250,000, oí- any other sum, could it for a moment be regarded as sufficient, without setting forth the situation of the parties and the facts, from which the court could see that if the allegations of the plaintiff’s petition were true, the natural consequence would be damage? Similarly in a case for negligence. it is not sufficient simply to allege that the defendant was guilty of negligence respecting his duty to the plaintiff to his damage in any particular sum; that is not a sufficient allegation of damage, but the facts must be recitdd so that upon the face of the petition it can be seen by the court, or any person judging it properly, that if the facts are true as *610 stated, they necessarily or probably indicate negligence and involve damage. And unless such facts are shown, other facts must be pleaded to show that in the particular case, as a matter of fact, damage did result; and the facts must be alleged, so that reasonably and practically, in the ordinary course of matters such as are stated in the petition, damages would result.
We think the plaintiff would scarcely expect to sustain its petition here upon that sort of an averment, viz. that the defendant maliciously delayed the construction of said railroad more than four months; we think it would be necessary to allege the acts which caused the delay. They have specified certain things; for instance, an opposition before the council to the granting of the permission to maintain the railroad or to construct it. Such opposition might or might not be actionable; and the delay occasioned by it might or might, not result in legal damages such as the plaintiff ought to recover against the defendants. It might be that the opposition was proper,although it might tend to delay the plaintiff or Mr. Robison, and might result in actual delay; yet the acts done or the words spoken may have been of such a character that the party had a perfect right to do them or speak them. And in such matters courts frequently draw the line very closely, as our own Supreme Court did in a case in 12 Ohio St., that of Frazier v. Brown, page 294. The plaintiff in that case charged that his neighbor injured him by maliciously digging in his own ground a hole, whereby water was cut off from the plaintiff’s ground. In the petition, after averring that there was a never failing rivulet or stiearn of water, to the great benefit and convenience of plaintiff; “and which said spring and the stream or rivulet of water issuing therefrom, had from time immemorial, been in the open, interrupted and continous oecupancjr of the plaintiff and his grantors. Nevertheless, the plaintiff 'says that the defendant being then and ther3 an adjacent proprietor, and *611 well knowing the premises, but contriving and wickedly intending to injure the plaintiff and to destroy said spring and the stream of water issuing thereform, and to deprive the plaintiff of the use and benefit of them, did, on or about the 80th day of October, A. D. 1856, at the county aforesaid, by means of a certain hole, wickedly and maliciously dug for the purpose of destroying said spring, and diverting-the stream or rivulet issuing therefrom running across, through and over the aforesaid premises of the plaintiff, upon the adjoining lands of him, the said defendant, near to and adjoining to the place where said spring issued or oozed out of the earth upon the premises of him, the said plaintiff, as aforesaid, whereby and by means of said hole, so dug as aforesaid, plaintiff says the defendant wickedly, wilfully and maliciously sunk and destroyed said spring of wafer and diverted the stream issuing therefrom, from running through, over and across the premises of the plaintiff, as aforesaid. Whereby, and by reason of the committing of the grievances aforesaid, by the defendant, plaintiff says he is damaged, ” etc. The court in construing a case of that kind, said, in the second paragraph of the syllabus, this: “The act, to-wit: the use of his own property— being lawful in itself, the motive with which the act was done is, in law, a matter of indifference. Whether it would have made any difference in law if the ‘hole’ had been dug from motives of unmixed malice, and was designed for no purpose of ornament or use--query.’’ The plaintiff in that case had alleged this malicious intent to injure, the wickedness with which the thing was conceived, and that he was injured by it; nevertheless, the court say, that as he was digging upon his own ground, and it might have been that what he did was for his own benefit, although he at the same time maliciously designed to injure his neighbor, yet, as there was a chance to suppose that it might not have been after all unmixed malice- — that the hole might have been of some *612 benefit to liim as well as injury to tlie other- — -the action could not be maintained. That is not analagous to this case, for many purposes, but it illustrates the necessity of setting forth the facts which would in and of themselves, if true as alleged,indicate the character of the transaction and its necessarily injurious consequences; so that, when the petition simply states that they delayed the construction of this road for four months, we think it is insufficient to show that they used any means that were so improper and unlawful under the circumstances, although they may have had improper motives in what they did, to constitute a sufficient pleading of the facts from which injury and damage might be said to flow.
Our general view of this petition here is already indicated, perhaps, that we think that the general averment “to the plaintiff’s damage,” or that, "the acts have resulted in damage’’generally “to the plaintiff $250,000,” is insufficient, and does not sufficiently supply the place of the averment that should liavé been given under these various paragraphs to which I have called attention, showing that actual injury did result from these acts, or some of them. Plaintiff’s attorneys and defendant’s are agreed as to this rule, viz: that in such a class of cases damages is the gist, or, as it is sometimes put, the gravamen of the charge in the action. If damages are the gist of the action, it is not sufficient simply to*state that damages did in fact result, but to allege and state the facts from which the'court could see, if the facts were true, that damages would naturally or possibly flow from the acts stated.
The petition is somewhat confused as to what rights Mr. Robison had at any time undertaken to assign — how much of it is sought to be based upon conspiracy as against Mr. Robison and his enterprise, and how much is directed against the plaintiff after its incorporaton; but we find it unnecessary to determine whether there would be anything in such *613 a case that Mr. Robison could assign; or, perhaps, more correctly, that the plaintiff could lawfully buy. The petition is faulty in these other respects which we regard as fatal; and the judgment of the court of common pleas in the action will, therefore, be affirmed by this court.
E. H. Hurd, O. S. Brumback. John E. Kvmlei-, for plaintiff in error.
Baker, Smith & Baker, for defendants in error.